[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated September 10, 1998, the plaintiff wife, Jane A. CT Page 7135 Granahan, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant husband, Mark T. Granahan, appeared through counsel. Both parties appeared with counsel February 17 and February 18, 2000 and presented testimony and exhibits. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of facts
The plaintiff wife (whose maiden name was Jane A. McClaine) married the defendant husband on June 6, 1994 in Burlington, Vermont. She has resided continuously in the State of Connecticut for one year next preceding the date of the filin of this complaint. All statutory stays have expired. The parties have one minor child born to the plaintiff since the date of the marriage, to wit; Patrick Joseph Granahan born January 18, 1995. No other minor child or children have been born to the plaintiff since the date of the marriage. The court further finds that no state or municipal agency has or is contributing to the support of the parties or their child. The plaintiff is 36 years of age and in good health. She is well educated having received a bachelor's degree in 1984 and a Doctor of Jurisprudence in 1987. She has several years experience as a practicing attorney and presently works on a contract basis for a construction company lawyer and grosses $73,268 per annum. Her future employability in the legal profession appears to be very promising The plaintiffs family lives in Texas arid following her separation from the defendant she and the minor child moved to said state where the defendant continues to reside in Connecticut. The plaintiffs parents have been very generous to the plaintiff during the marriage and have a very good relationship with the defendant They gave the plaintiff $10,000 as a wedding gift to pay off the defendants car loan and gave the parties $19,000 for trips. At the time of the marriage the plaintiff had $7,000 in an IRA account and
$15,000 in a mutual fund.
The defendant is 46 years of age and in good health. He also is well educated having received a bachelor of science degree in marketing engineering in 1975 and a master's degree in business administration in 1977. He has been gainfully employed on a full-time basis and is currently employed by Avtex, Inc. a business he wholly owns. The parties are in dispute as to his earnings and earning capacity over the past few years and that issue will be dealt with elsewhere in this decision. The defendant's work history has been primarily in sales with automatic type products. Avtex was started in 1995 and engages in automatic inspection controls. The financial outlook for the company is somewhat questionable given the rapidly changing market. Both the defendant's father and father-in-law were very supportive of the defendant although their financial help is in dispute. As to the defendant's pre-marital assets he owns real estate in Hingham, Massachusetts which he owned for a period of CT Page 7136 20 years and the plaintiff waived any claim to said asset. Further, the plaintiff claims a pre-marital 401K plan of $140,000 but this amount is in dispute. The defendant used a substantially smaller amount in financial affidavits he filed with the court in connection with the dissolution of his first marriage. The court finds that the amount of the defendant's 401K plan pre-marital is $80,000.
The parties first met in April of 1994 at a mutual friend's wedding. The plaintiff at that time was living in Houston, Texas and the defendant in Connecticut. The defendant was previously divorced and had one child, a daughter, who is now a teenager. The daughter relates very well to the plaintiff and to the parties minor child. The parties came from different backgrounds and financial circumstances which they were unable to overcome. The plaintiff moved back to Texas in 1998 and has the child with her. Based upon the extensive testimony of both parties the court finds that neither party is at fault for the breakdown of the marriage.
With respect to the earnings of the plaintiff the parties are not in dispute. The plaintiffs gross income on a weekly basis amounts to $1,409. On his financial affidavit the defendant claims gross income from his employment of $1,200 per week and rental income of $255 per week. John Kramer, a forensic accountant retained by the plaintiff claimed that the defendant withdrew $175,162 from his business in 1998 and $115,703 in 1999. Charles Brush, Jr. the defendant's accountant employed on a regular basis testified that the defendant's net income amounted to $112,895 in 1998 and $62,404 in 1999. The court finds that the defendant's present earning capacity is $100,000 per year.
The court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes Sections46b-56, 46b-56a and 46b-59. The court has further considered all of the factors in Connecticut General Statutes 46b-81, 46b-82, 46b-89 and 46b-62
and other pertiment statutes, earnings and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial orders set forth below. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is furthered ordered that;
1. CUSTODY AND PARENTING SCHEDULE
a. The parties shall have joint legal custody of the minor child, Patrick Granahan. The plaintiff shall be the primary residential parent. The residence of the child shall be with the plaintiff in Texas.
b. The defendant shall have liberal and flexible visitation with the minor child including, but not limited to the following: CT Page 7137
(1) Telephone access on a daily basis.
(2) Defendant shall be entitled to visit the minor child whenever he is in Texas provided he gives the plaintiff advance notice of at least seventy-two hours.
(3) The minor child shall visit with the defendant in Connecticut during the February school vacation and four (4) weeks during the summer. All transportation arrangements shall be made by and paid for by the plaintiff.
(4) The parties shall alternate major holidays including July 4, Labor Day, Thanksgiving, Christmas, Easter and Memorial Day. July 4, 2000 shall be the defendant's holiday and alternating thereafter. Each of the defendant's holidays shall be for a three (3) day period including the holiday in question. All transportation arrangements shall be made and paid for by the defendant.
c. Both parents shall give due consideration to the minor child's academic, extracurricular, athletic, social and religious activities when formulating parental access.
2. CHILD SUPPORT: The defendant shall pay child support to the plaintiff in accordance with the Connecticut Child Support Guidelines and based upon the annual gross income of the plaintiff of $73,268 and of the defendant $113,260 (includes his annualized rental income). The parties shall alternate the IRS and State tax exemptions starting with the first tax year of 2000 being claimed by the plaintiff. The defendant shall also pay 50% of the parochial school expenses and his share of unreimbursed medical expenses in excess of the first $100.00 annually.
3. ALIMONY: The defendant shall pay alimony to the plaintiff in the sum of One Hundred ($100.00) Dollars per week for two (2) years. Alimony shall terminate upon the plaintiff death or remarriage or the defendants death and shall be non-modifiable as to term.
4. MEDICAL INSURANCE: The defendant shall maintain medical/dental insurance for the benefit of the minor child. Connecticut General Statutes § 46b-84 (e) shall apply.
5. LIFE INSURANCE: The defendant shall maintain life insurance with a face amount of not less than One Hundred Thousand ($100,000) Dollars naming the plaintiff as beneficiary in trust on behalf of the minor child. CT Page 7138
6. DIVISION OF ASSETS: The parties shall divide the marital assets as follows:
 EXISTING ASSETS
Plaintiff Defendant
Fidelity IRA $23,153 COGNEX ESP $181,022 Fidelity Mutual Fund 27,876 SEP IRA 18,811 $51,029 IRA 8,792 Avon Home 26,000 Business Checking 18,419 Business Inventory 6,300 Car 1,500 Excess IRS Payment 26,000
286,844
*Personal checking accounts and defendant's Massachusetts property not included.
 PREMARITAL AND NON-MARITAL ASSETS
Plaintiff Defendant
Premarital IRA $ 7,000 401K $ 80,000 Mutual Fund 15,000 House 20,000 $22,000 100,000
 MARITAL ESTATE
Plaintiff= $29,029 Defendant = $186,844
Each party shall retain his or her assets. The defendant shall transfer to the plaintiff by Qualified Domestic Relations Order (QDRO) within thirty (30) days of the dissolution of marriage the sum of Seventy Eight Thousand Nine Hundred Eight ($78,908) Dollars, which represents a 50/50% division of the marital assets.
7. DEBTS: Each party shall pay and hold the other harmless from all debts listed on their respective financial affidavits unless otherwise indicated herein.
8. PERSONAL PROPERTY: The parties' personal property has been divided by mutual agreement, except that the plaintiff shall receive from the marital home the items listed on the attached Schedule A. CT Page 7139
9. ATTORNEY'S FEES: The defendant shall pay the plaintiffs attorney's fees in the sum of $5,000 within thirty (30) days of the dissolution of marriage.
John R. Caruso, J.
 SCHEDULE "A"
Upstairs
Patrick's Room: Bookshelf Chest of drawers Child's antique sofa Rocking chair Bed
Colleen's Room: Chest of drawers
Master Bedroom: King size bed End tables
Downstairs
Living Room: Television Oriental rug Desk Table (small kitchen/dining) and two chairs Peach chair in living room
Dining Room: Dining room table and chairs Two (2) bookshelves China
Kitchen: Miscellaneous premarital pots/pans/utensils
Garage: Stereo VCR Boxes All paintings/artwork except those which came from defendant's family.